UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCY FIGARD,

       Plaintiff,

v.                                                   Case No. 1:09-cv-425
                                                   Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
       _____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on November 18, 1962 and earned a GED (AR 43-44).[1] She alleged a disability onset date of October 20, 2001 (AR 43). Plaintiff had previous employment as a lunch helper at a high school, a receptionist, home health care aide, secretary and telephone operator (AR 47-50, 103, 208, 214). Plaintiff identified her disabling condition as fibromyalgia, fatigue, migraines, back pain and pain (AR 207). This is plaintiff's second application for disability benefits. Plaintiff previously filed for DIB and SSI on February 10, 2003, alleging the same disability commencement date of October 20, 2001 (AR 20). In a decision denying benefits entered March 25, 2005, Administrative Law Judge (ALJ) James F. Prothro, II, found that plaintiff was not disabled from October 20, 2001 through March 25, 2005 (AR 100-108). Plaintiff filed the present

---

[1] Citations to the administrative record will be referenced as (AR "page #").

application on June 13, 2006 (AR 20). After initial denial of her claim, plaintiff, proceeding pro se, attended an administrative hearing on June 3, 2008 before ALJ Paul W. Jones (AR 20, 32). ALJ Jones reviewed plaintiff's claim *de novo* and entered a decision denying benefits on October 9, 2008 (AR 20-31). As an initial matter, ALJ Jones found that the doctrine of *res judicata* applied to ALJ Prothro's disability determination for the period from October 20, 2001 through March 25, 2005 (AR 20). ALJ Jones further found that plaintiff was not disabled from March 26, 2005 through the entry of his decision on October 9, 2008 (AR 24, 29, 31). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not

2

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

3

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, ALJ Jones found that plaintiff has not engaged in substantial gainful activity since October 21, 2001(AR 23). ALJ Jones also found that, for purposes of the DIB claim, plaintiff met the insured status requirements of the Social Security Act through December 31, 2007 (AR 23). At step two, the ALJ found that plaintiff suffered from severe impairments of spondylosis of the lumbar spine with radiculopathy (AR 23). At step three, ALJ Jones found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 26).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform the requirements of work as defined in 20 CFR 404.1567(b) and 416.967(b) [i.e., light work] except for lifting and carrying more than 20 pounds

4

occasionally and 10 pounds frequently; sitting for more than six hours in an eight-hour workday with normal work-breaks; standing or walking for more than a total of two hours in an eight-hour workday with normal work-breaks; and performing postural movements (balancing, stooping, kneeling, crouching, crawling, and climbing) more than occasionally.

(AR 27).

ALJ Jones found that plaintiff's past relevant work as a secretary, telephone operator, receptionist and home healthcare aide did not require the performance of work-related activities precluded by her RFC (AR 30). Because plaintiff retained the RFC to perform her past relevant work as it is generally performed in the regional economy, the ALJ determined that plaintiff was not disabled at the fourth step of the sequential evaluation process (AR 31). Accordingly, ALJ Jones determined that plaintiff was not disabled under th Social Security Act (AR 31).

### III. ANALYSIS

Plaintiff has raised two issues on appeal.

**A. The ALJ's decision wrongly rejects the opinions of the doctor who treated Ms. Figard and the doctor who examined her and instead accepts the opinion of a doctor who never even met her. As a result, Ms. Figard is entitled to a remand to consider at least a closed period of disability, if not a total award of disability.**

Plaintiff contends that the ALJ wrongly rejected the opinion of a treating physician, Richard Van Dyken, M.D. Plaintiff's Brief at 13. The ALJ addressed Dr. Van Dyken's opinion as follows:

As for the opinion evidence, I specifically considered the opinion offered in March 2006 by Dr. VanDyken [sic], claimant's primary care physician, who indicated that he considered her "unable to work at any job" due to her reported symptoms. He further assessed her capacity for sitting, and her capacity for standing/walking, within an eight-hour workday as less than two hours, and indicated that she should rarely lift 10 pounds and rarely stoop/bend, crouch and climb ladders

(Exhibit B2f) [AR 299-304]. I also considered the opinion of Dr. Hilleson [J. Hilleson, D.O.] who conducted a consultative examination of claimant at the request of the Administration in September 2006, and whose recommendations were that she not lift more than 10 pounds, avoid repetitive bending and squatting, and alternate between sitting and standing (Exhibit B5f) [318-28].

I do not accord significant weight to either of these opinions since both appear to be based primarily upon claimant's subjective complaints. Neither physician cited objective medical findings to support their opinions. Both opinions were issued prior to claimant's having undergone back surgery, which, per her own subsequent admissions to her treating physicians, resulted in an overall improvement of her symptoms.

The medical opinions offered in October 2006 from the DDS [non-examining] medical consultants adopted the finding of a "non-severe" mental impairment and the physical limitations found by Judge Prothro in his determination of plaintiff's residual functional capacity as cited within his decision issued March 25, 2005 (Exhibits B9f, B10f, and B11f) [AR 332-54]. As previously explained, since the evidence of record does not establish a significant worsening of claimant's overall medical condition to warrant a change of the residual functional capacity previously determined, these opinions are entirely consistent with the record as [a] whole.

(AR 30).

With respect to both the treating physician, Dr. Van Dyken, and the examining physician, Dr. Hillelson, plaintiff asserts: (1) that the ALJ improperly rejected the doctor's opinions, which were based on range of motion studies and (2) that both the opinions were rendered before plaintiff underwent surgery on January 29, 2007 to remove a spinal cyst (AR 387-88). Plaintiff contends that taken together, the opinions of Dr. Van Dyken and Dr. Hillelson "create strong support for a finding of disability for a closed period" from March 25, 2005 through the surgery in January 2007. Plaintiff's Brief at 15. In addition, plaintiff apparently asserts a separate error that the ALJ failed to "incorporate any sedating side effects" of plaintiff's medication into the RFC assessment. *Id.* at 17-18.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a Social Security claimant's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

1.  **Dr. Van Dyken**

Dr. Van Dyken evaluated plaintiff's RFC on March 7, 2006 (AR 304). The doctor concluded: that plaintiff could walk three blocks, sit for 30 minutes at one time, and stand for 20 minutes at one time; that plaintiff could sit/stand/walk a combined period of less than 2 hours in an 8-hour workday; that plaintiff must walk at least 20 minutes during the workday and work at a

7

position that allows her to sit, stand or walk at will; that plaintiff needs unscheduled breaks; that she can lift 10 pounds "rarely" and can never lift 20 pounds; that she cannot stoop, bend, crouch or climb ladders; that she can only rarely twist or climb stairs; that she has significant limitations with repetitive reaching, handling or fingering; and that her impairments would cause her to miss more that 4 days of work per month (AR 300-04). It appears from the record that Dr. Van Dyken examined plaintiff only twice after ALJ Prothro determined that she was not disabled (AR 292-94). The only examinations relevant to plaintiff's claim with respect to the 2006 RFC questionnaire were performed on August 16, 2005 and March 7, 2006 (AR 292-94). There is no evidence of range of motion studies performed on those dates and plaintiff does not point out any "range of motion" studies made during the relevant time period (i.e., after March 25, 2005) which supports Dr. Van Dyken's RFC determination. The ALJ articulated good reasons for not crediting Dr. Van Dyken's opinion expressed in the RFC questionnaire dated March 7, 2006 (AR 299-304). Accordingly, plaintiff's claim should be denied as to Dr. Van Dyken.

### 2. Dr. Hillelson

Dr. Hillelson was not a treating physician, having examined plaintiff one time (AR 318-24). Consequently, the ALJ was not required to articulate "good reasons" for rejecting her opinion. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 875-76 (6th Cir. 2007) (the Social Security Agency requires ALJ's to give reasons only for treating sources, citing 20 C.F.R. § 404.1527(d)(2); "the procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are"). Nevertheless, the regulations require the ALJ to consider the opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts. *See*

20 C.F.R. § 404.1527(f). An ALJ is not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. *See* 20 C.F.R. § 404.1527(f)(2)(i).

> However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.

*Id.*

Here, the ALJ's stated reasons for discounting Dr. Hillelson's opinion, to wit, that the doctor did not cite objective medical findings and that her opinion was not supported by such findings, are not supported by the record. Dr. Hillelson examined plaintiff, performed trigger point testing for fibromyalgia, and performed range of motion tests (AR 318-24). Contrary to the ALJ's decision, Dr. Hillelson's September 21, 2006 opinion cited objective medical findings to support her conclusion that plaintiff should "not be lifting more than 10 pounds, should avoid repetitive bending or squatting and [] should alternate positions from sitting and standing" (AR 321). Accordingly, substantial evidence does not support the ALJ's decision to discount Dr. Hillelson's opinion.

### 3. Timeliness of the doctors' opinions

Plaintiff's argument regarding the timeliness of the doctors' opinions, i.e., that both of the opinions predated her spinal surgery, is not well developed. The record reflects that plaintiff sought both pre- and post-surgical treatment from Daniel Mankoff, M.D., of Michigan Pain Consultants, P.C. (AR 359-79). The ALJ reviewed this treatment in some detail, observing that plaintiff received a standard postoperative course of physical therapy and that plaintiff received treatment from Dr. Mankoff in June 2008 (AR 24-26). The final treatment involved a cortisone

injection in plaintiff's cervical spine which she tolerated well (AR 25-26). Plaintiff does not explain how the January 2007 spinal surgery affected the restrictions listed by either Dr. Van Dyken or Dr. Hillelson. Accordingly, plaintiff's claim with respect to the timeliness issue should be denied.

### 4. Medication side effects

Next, plaintiff contends that the ALJ erred by failing to address the side effects of her medication. Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992). *See*, *e.g.*, *Bentley v. Commisoner of Social Security*, No. 00-6403, 2001 WL 1450803 at *1 (6th Cir. Nov. 6, 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Secretary of Health & Human Servs.*, No. 92-1632, 1993 WL 291301 at *7 (6th Cir. Aug. 2, 1993) (no objective medical evidence supported claimant's allegation that Tylenol 3 made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant).

Plaintiff's claim is without merit. First, the ALJ addressed plaintiff's claims of side effects, noting that "the record shows the medication regimen prescribed for her symptoms has not warranted significant change since before March 26, 2005" (i.e., since ALJ Prothro's decision finding that plaintiff was not disabled) (AR 29). Second, it appears that the only relevant evidence of side effects from medication appeared during the September 2006 consultative examination, when Dr. Hillelson noted that plaintiff was somewhat lethargic, apparently due to either pain medication

or a migraine headache (AR 320-21). Plaintiff does not point to any evidence within the record to demonstrate that she reported medication side effects to Dr. Van Dyken or any other treating physician. Accordingly, plaintiff's claim that the ALJ failed to address the medication side effects should be denied.

> **B. The ALJ's decision failed to consider the opinion of the treating doctor submitted after the hearing, but before the decision was issued.**

Finally, plaintiff contends that the ALJ failed to consider a new medical opinion issued by Dr. Van Dyken after the hearing. The court agrees. Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants, like plaintiff, who pursue an administrative hearing without counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). *See generally*, 20 C.F.R. § 404.944.[2]

---

[2] Section 404.944 provides in pertinent part as follows:

At the hearing, the administrative law judge looks fully into the issues, questions you and the other witnesses and accepts as evidence any documents that are material to the issues. . . The administrative law judge may also reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence.

At the conclusion of the June 3, 2008 hearing, the ALJ advised plaintiff that he would be ordering additional medical records from three sources (AR 96). In a letter dated July 14, 2008, the ALJ sent plaintiff 145 pages of additional medical records (AR 377-521) and offered her an opportunity to respond to these new records (AR 274-75).[3] In a letter dated July 17, 2008, plaintiff advised ALJ Jones that she would see Dr. Van Dyken on August 5th and asked the ALJ to hold the record open until August 15th so she could obtain written statements from her treating physicians (AR 276).

In an affidavit submitted to the Appeals Council, plaintiff stated that Dr. Van Dyken completed an RFC questionnaire on August 5, 2008 (AR 287-91), and that same day she mailed a copy of the completed questionnaire to the "Social Security Administration, Office of Disability Adjudication and Review, to the attention of ALJ Paul Jones" (AR 285). Plaintiff states that this letter was not returned to her as undeliverable (AR 285).

The August 5th RFC questionnaire is based upon new evidence, including an EMG, a recent cervical MRI testing positive for spinal stenosis and foraminal stenosis, and a "recent CT myleogram - confirming the above" (AR 287). Dr. Van Dyken opined that plaintiff's condition had deteriorated: she could walk only one block without pain; could only sit 10 to 15 minutes at a time; could only stand for 10 minutes at a time; and that she could lift less than 10 pounds "rarely" and never lift 10 pounds (AR 287-91). Interesting, it appears that plaintiff's ability to perform maneuvers improved, in that she could now "rarely" stoop, bend, crouch and climb ladders (AR 290-91).

---

[3] Plaintiff's brief erroneously states that some of these post-hearing actions occurred in 2009 rather than 2008.

Plaintiff also sent ALJ Jones a letter dated August 12th, which the agency received on August 15th, in which plaintiff asked for a few more days to submit evidence because "[m]y appt with Dr. Van Dyken has been postponed from Aug 5 to Aug 19th" (AR 277). In this letter, plaintiff refers to an MRI taken on June 29th, a Myelogram on August 4th and a nerve conduction study (no date given) (AR 277).[4] Plaintiff makes no mention in this letter of having sent the RFC questionnaire to the ALJ (AR 277). While the ALJ's decision discusses the 145 pages of post-hearing medical records (AR 25-26, 29), there is no discussion of the August 5, 2008 RFC questionnaire completed by Dr. Van Dyken.

The issue before the court is whether the ALJ should have reviewed Dr. Van Dyken's August 5, 2008 RFC questionnaire before issuing the decision denying benefits. Plaintiff's unopposed affidavit states that she sent the doctor's RFC questionnaire to ALJ Jones on August 5th. However, there is no evidence that the ALJ (or the agency) ever received it. Under these circumstances, given the inquisitorial nature of the proceedings, the ALJ's special duty to develop the record for an unrepresented claimant, the substantial amount of medical records produced after the hearing, and the ALJ's invitation extended to plaintiff to respond to these records, the court concludes that the ALJ should review the August 5th questionnaire on remand.[5]

---

[4]It would appear that Dr. Van Dyken did not examine plaintiff on August 5, 2008, the date he completed the RFL questionnaire.

[5] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Commissioner (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Commissioner (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). While plaintiff raises arguments that could apply to a sentence-six remand, she does not cite authority to support such a remand in this case. In addition, the court does not consider this to be a sentence-six scenario, because it did not involve new evidence. The ALJ invited plaintiff to file additional evidence in response to the medical records obtained after the hearing. According to plaintiff's affidavit, she mailed the RFC questionnaire to the ALJ while the record remained open. Although the questionnaire was not placed in the record, the court does not consider the questionnaire to be

Accordingly, on remand, the Commissioner should review Dr. Van Dyken's August 5th RFC questionnaire, which indicates that plaintiff's condition had deteriorated since the doctor issued the last questionnaire in 2006.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should evaluate Dr. Van Dyken's opinions expressed in the August 5, 2008 RFC questionnaire and re-evaluate whether substantial evidence supports the limitations set forth in Dr. Hillelson's September 21, 2006 report.


Dated: July 1, 2010                               /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

"new and material evidence" as contemplated by sentence six.